IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LIBERTY BANK, F.S.B.,       )
                            )
        Appellant,           )
                            )
v.                          )        Case No. 13-4059-CM
                            )
D.J. CHRISTIE, INC., et al.,)
                            )
        Appellees.           )
                            )

**MEMORANDUM AND ORDER**

Intervenor and party-in-interest Liberty Bank appeals from the bankruptcy court's May 17, 2013 order and judgment approving the settlement agreement between bankruptcy debtor D.J. Christie, Inc. ("Debtor"), David J. Christie, and Alexander Glenn (collectively "the Christie Parties") on the one hand and Alan E. Meyer and John R. Pratt on the other hand ("Settlement Agreement") (Doc. 8). For the following reasons, the court reverses in part, vacates the order, and remands for further proceedings.

I. **FACTUAL BACKGROUND**

The underlying dispute originates from a failed joint venture to build a residential housing complex. Meyer and Pratt sued the Christie Parties for damages in 2007. After a nine-day trial, the jury returned a verdict in favor of Meyer and Pratt. This court entered judgment on September 9, 2008, for, among other things, actual damages totaling $7,170,000.00, and punitive damages totaling $100.00 ("Initial Judgment").

The Christie Parties appealed. This court stayed execution of the judgment pending appeal upon deposit of a supersedeas bond. The Tenth Circuit affirmed the lost damages award and the punitive damages award to Meyer and Pratt in the total amount of $7,170,703.00, as well as the joint

and several liability of the Christie Parties for that amount. The Tenth Circuit reversed and remanded other issues to this court. The mandate issued on April 25, 2011. And this court resolved the remanded issues on July 15, 2011, and entered an amended judgment ("Amended Judgment").

On May 20, 2011, Debtor commenced a Chapter 11 case. Debtor listed the Initial Judgment as a disputed claim. Debtor contended the Initial Judgment was a disputed claim because it was more than offset by Iowa judgments held by the Christie Parties against Meyer and Pratt ("the Iowa Judgments").

On July 29, 2011, Debtor commenced an adversary proceeding against, among others, Meyer, Pratt, Christie, and Glenn ("the Adversary Proceeding") to resolve whether Debtor was entitled to offset its liability to Meyer and Pratt based on the Iowa Judgments. Liberty Bank intervened in the Adversary Proceeding based on its position that an offset would negatively impact its garnishment liens against Debtor and Christie.

The following additional facts are relevant to the Adversary Proceeding:

- **Bickel & Brewer.** The law firm Bickel & Brewer represented Meyer and Pratt in the federal lawsuit pursuant to a March 2009 contingent-fee arrangement.

- **The Payment Assignments.** In June 2010, while the federal appeal was pending, Meyer assigned payment interests in the Initial Judgment in the total amount of $723,508.71 to certain third-party creditors and filed copies of the assignments with this court ("the Payment Assignments").

- **The Iowa Judgments.** After the mandate issued, the Christie Parties acquired the Iowa Judgments by assignments dated April 29, 2011; May 2, 2011; May 4, 2011; and May 18, 2011. The total amount of the Iowa Judgments at the time of acquisition by the Christie Parties was $7,402,677.22.

- **Liberty Bank's Garnishment Liens.** Liberty Bank obtained two judgments against Meyer in Iowa state court in 2010. After registering those judgments in Kansas, Liberty Bank filed a Kansas state court garnishment action against Christie and Debtor in May 2011. Liberty Bank served a garnishment order against Christie on May 16, 2011, and one against Debtor on May 19, 2011. Christie and Debtor answered on May 31, 2011, asserting they had no liability to Meyer because the Initial Judgment was not final (as this court was still resolving the remanded issues) and because of offset with the Iowa Judgments.

Effective December 6, 2012, Meyer, Pratt, and the Christie Parties ("the Settling Parties") entered the Settlement Agreement. Liberty Bank is not a party to the Settlement Agreement and was excluded from settlement negotiations. Under the Settlement Agreement, the Settling Parties agree that the Iowa Judgments will be offset in full against the Amended Judgment. They also agree that the Christie Parties will pay Meyer and Pratt $1.825 million in cash.

Debtor moved the bankruptcy court to approve the Settlement Agreement. Liberty Bank objected, arguing that the Settling Parties were using the Settlement Agreement to "evade lawful obligations owed to Liberty Bank" based on its garnishment liens. The bankruptcy court approved the Settlement Agreement over Liberty Bank's objection. The bankruptcy court noted the standard for the approval of settlement agreements under Bankruptcy Procedure 9019(a). After considering the various factors under this rule, the bankruptcy court determined that "each of the four factors generally considered when evaluating a proposed settlement are satisfied." (Doc. 1-3 at 13.) Next, the bankruptcy court turned to Liberty Bank's objections.

The bankruptcy court explained that it must deny approval of the Settlement Agreement if Liberty Bank's interests are impaired. It determined Liberty Bank's interests were not impaired for two reasons. First, the bankruptcy court noted that the ground for all of Liberty Bank's objections to the substance of the Settlement Agreement is the premise that its garnishment of Debtor and Christie gives Liberty Bank liens in the consideration to be paid to Meyer. The bankruptcy court analyzed the validity of the liens and determined that Liberty Bank did not have valid liens because, at the time Liberty Bank served its garnishment orders, Debtor and Christie did not have any "indebtedness due" to Meyer as the Amended Judgment had not been entered. The bankruptcy court therefore held that Liberty Bank's objections could be denied because the predicate to its objections was erroneous.

Second, the bankruptcy court alternatively ruled that even if Liberty Bank's garnishment liens were valid, the Settlement Agreement did not impair its interests. It determined that Liberty Bank's garnishment liens were inferior to the interests of the Payment Assignments and the attorney lien of Bickel & Brewer. As a holder of third-priority, the bankruptcy court concluded that Liberty Bank's interests were not impaired because the two senior liens would consume all of the $1.825 million that would otherwise be paid to Meyer. The bankruptcy court further determined the "offset in full" did not impair Liberty Bank's interests because Liberty Bank had no right to interfere with the relationship between Meyer, Debtor, and Christie. The bankruptcy court then approved the Settlement Agreement. This appeal followed.

## II. LEGAL STANDARDS

When sitting in an appellate capacity, the court has the authority to affirm, reverse, modify, or remand the bankruptcy court's ruling. 28 U.S.C. § 158(a). The court reviews the bankruptcy court's legal determinations de novo and its factual findings for clear error. *In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010). A bankruptcy court's approval of a settlement agreement may be disturbed on appeal only when it achieves an unjust result amounting to a clear abuse of discretion. *Reiss v. Hagmann*, 881 F.2d 890, 891–92 (10th Cir. 1989). If the bankruptcy court approves a settlement agreement without a sufficient factual foundation, this constitutes an inherent abuse of discretion. *Id.* at 892.

## III. ANALYSIS

Liberty Bank contends the bankruptcy court's alternative grounds for denying its objection to the Settlement Agreement are erroneous. The Christie Parties, Meyer, and Pratt respond to the merits of Liberty Bank's appeal. Meyer and Pratt additionally argue the court should dismiss Liberty Bank's appeal as equitably moot. The court first addresses the equitable mootness argument.

## A. The Court Does Not Dismiss The Appeal As Equitably Moot

Equitable mootness is a doctrine that allows a court "to decline to hear a bankruptcy appeal, even when relief could be granted, if implementing the relief would be inequitable." *In re C.W. Mining Co.*, 641 F.3d 1235, 1239–40 (10th Cir. 2011). Liberty Bank contends this doctrine is limited to confirmed Chapter 11 reorganization plans and does not apply to an appeal involving an order approving a settlement agreement. (Doc. 23 at 10 (arguing doctrine applies to "appeals of confirmed plans of reorganization").)

The Tenth Circuit formally adopted the equitable mootness doctrine in the context of a confirmed Chapter 11 reorganization plan and has not applied it in other contexts. *In re C.W. Mining Co.*, 641 F.3d at 1240; *see also In re Paige*, 584 F.3d 1327, 1337–38 (10th Cir. 2009) (adopting equitable mootness doctrine). The rationale of the Tenth Circuit cases reviewed by this court does not appear to definitively close application of the doctrine to this case. But the court's own research reveals that other circuits have inconsistent views on whether the doctrine applies to appeals from bankruptcy court orders approving settlement agreements. *Compare In re Morningside Mobile*, 32 F. App'x 130 (5th Cir. 2002) (affirming district court's dismissal of appeal from order approving settlement agreement as equitably moot); *and In re NAMCO Capital Group Inc.*, Nos. CC-10-1120, 08-32333-BR, 2010 WL 6259977 (9th Cir. BAP Oct. 27, 2010) (dismissing appeal of order approving settlement agreement as equitably moot); *with In re Age Refining, Inc.*, Nos. 12-50718, 12-50805, 2013 WL 3820693, at *4 (5th Cir. July 24, 2013) (expressing "grave doubt that equitable mootness should ever apply to the appeal of an adversary proceeding").

Rather than deciding whether the doctrine applies to this case, the court determines that the better course is to consider the merits of the appeal. The doctrine is discretionary—rather than jurisdictional—and affords the court this option. *See In re C.W. Mining*, 641 F.3d at 1240 (declining to

-5-

decide whether equitable mootness applies in the Chapter 7 context and resolving appeal on the merits). The court therefore turns to the merits of Liberty Bank's arguments.[1]

### B. Liberty Bank Has Valid Garnishment Liens

Liberty Bank argues the bankruptcy court erroneously determined that it lacked valid garnishment liens. The court agrees. The validity of the garnishment liens is controlled by state law. Under Kansas law, an order for garnishment attaches to any indebtedness due at the time of service of the garnishment order and to any indebtedness becoming due before the garnishee files its answer. *Curiel v. Quinn*, 832 P.2d 1206, 1209 (Kan. Ct. App. 1992). But it does not attach to any indebtedness that is contingent and unmature. *Id.*

The bankruptcy court concluded that Liberty Bank's garnishment liens were not valid because "as of the date of the initiation of the garnishment proceedings and the date of the answers, there was no debt owed to Meyer by either Debtor or Christie." (Doc. 1-3 at 18.) The bankruptcy court reached this conclusion because "[a]s of May 31, 2011, the [Initial Judgment] had been entered, execution of the judgment had been stayed pending appeal, and the mandate of the Tenth Circuit affirming the judgment in part had been issued, but the [Amended Judgment] was not entered by [this court] until

---

[1] Assuming the doctrine applied to orders approving settlement agreements, Meyer and Pratt fail to establish this appeal is equitably moot. *See In re Paige*, 584 F.3d at 1339–40 (explaining that party seeking to prevent the court from hearing the merits of the appeal bears the burden). It is true that Liberty Bank failed to seek a stay pending appeal and that the Settling Parties consummated portions of the Settlement Agreement. But Meyer and Pratt do not establish that reversal will unduly harm non-party creditors, which is the "foremost concern" in the court's analysis. *Id.* at 1343. The parties most directly impacted by the Settlement Agreement are before the court (or represent parties before the court) and knew of Liberty Bank's objection. They are also the parties that excluded Liberty Bank from the settlement negotiations. The bankruptcy court continued the hearing on the motion to dismiss the Adversary Proceeding until this appeal is resolved. And Meyer and Pratt do not establish the status of the remaining lawsuits related to this case. Meyer and Pratt argue that the $1.825 million has been distributed. But money can be returned. In addition, a "quick look" at the merits indicates that Liberty Bank's appeal is legally meritorious and equitably compelling. *See id.* at 1348 (discussing that the sixth factor of the equitable mootness analysis requires the court to evaluate whether a "quick look" at the appeal suggests the claims have merit). The court recognizes that this bankruptcy case is contentious and complicated. The bankruptcy court has done an admirable job managing these parties, moving the case towards resolution, and resolving the numerous disputed issues. The court is confident that the bankruptcy court can ably handle the proceedings resulting from this order. For these reasons, the court would not dismiss the appeal as equitably moot even if the doctrine applied.

June 15, 2011." (*Id.*)  It therefore held that Kansas courts would find that the judgment debt "was unmatured and not subject to garnishment" at the time Debtor and Christie filed their answers.

The bankruptcy court's holding is based on the error that Meyer did not have an enforceable right to collect on the over $7.1 million affirmed by the Tenth Circuit until after this court entered the Amended Judgment.  On April 25, 2011, the Tenth Circuit issued its mandate, affirming the award to Meyer and Pratt in an amount of $7,170,703.00, and reversing and remanding the case to this court to consider the discrete issue of whether Meyer and Pratt were **also** entitled to obtain nearly $2 million more from the Christie Parties based on the jury's additional damages award, which was unrelated to the $7,170,703.00.

Thus, as of April 25, 2011, the judgment affirming the over $7.1 million was final pursuant to the "mandate rule," which provides that the Tenth Circuit's mandate is effective upon issuance and that the district court lacks authority to modify or alter issues foreclosed by the mandate.  *See* Fed. R. App. P. 41(c) ("The mandate is effective when issued."); Fed. R. App. P. 41 advisory committee note (recognizing that "[s]ubdivision (c) is new" and clarifying that "[t]his amendment is intended to make it clear that the mandate is effective upon issuance and that its effectiveness is not delayed until receipt of the mandate by the trial court or agency, or until the trial court or agency acts upon it"); *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1125–26 (10th Cir. 2003) (stating that "a district court is bound to follow the mandate, and the mandate controls all matters within its scope").

Reading the mandate and opinion together, they precluded this court from modifying or altering the over $7.1 million affirmed by the Tenth Circuit.  The only thing remaining for this court on the affirmed portion of the judgment was to carry it into execution.  Meyer and Pratt therefore obtained an enforceable right to collect the $7,170,703.00, on April 25, 2011.  A Kansas court is unlikely to disregard this federal law and make a contrary ruling.  Because Liberty Bank served its garnishment

orders after April 25, 2011, the garnishment orders attached to the mature and not contingent indebtedness due from Christie and Debtor to Meyer. Liberty Bank acquired valid garnishment liens, and the bankruptcy court's contrary ruling is reversed.[2]

### C. The Bankruptcy Court Failed To Make Any Findings Regarding Priority In The Over $7.1 Million Affirmed By The Tenth Circuit

Liberty Bank next argues that the bankruptcy court's alternative ruling is erroneous. The court again agrees. Although the bankruptcy court made findings regarding the priorities of different lien holders in the settlement funds (i.e., the $1.825 million), it made no findings regarding priorities in the $7,170,703.00 affirmed by the Tenth Circuit. It likewise did not make any finding that the over $7.1 million was insufficient to cover all of the competing claims. By failing to make these findings, the bankruptcy court could not assess the impact of the "offset in full" language to Liberty Bank. In other words, by failing to analyze the priorities in those funds, the bankruptcy court essentially made a de facto determination that all of the Iowa Judgments had priority over Liberty Bank. The record does not clearly support this finding. Nor does the record make clear the amount of the Iowa Judgments that had priority to Liberty Bank's garnishment liens (particularly the lien against Christie). Without this factual foundation, neither the bankruptcy court nor this court can determine the impact to Liberty Bank of the "offset in full" language. Similarly, absent these findings, both courts lack a sufficient factual foundation to determine whether the Settlement Agreement is fair and equitable.[3]

The court also disagrees with the bankruptcy court's rationale that Liberty Bank is not impacted by the "offset in full" language because it lacks the right to interfere with the relationship between

---

[2] In hindsight, the court now questions some of its rulings in handling the case on remand. Holding fast to those prior rulings is not in the interest of justice.

[3] The parties dispute whether the standard of review for this ruling of the bankruptcy court is de novo or abuse of discretion. Liberty Bank contends review is de novo because the bankruptcy court made a legal determination on whether the Settlement Agreement impacts its rights. The Christie Parties argue review is abuse of discretion because Liberty Bank's objection is merely one factor in the Rule 9019(a) analysis. Because this ruling fails under either standard, the court expresses no opinion on this issue.

-8-

Meyer, Debtor, and the Christie Parties. Assuming the bankruptcy court is correct that Liberty Bank lacks the right to interfere, this fact does not necessarily mean those parties can rearrange the priority of valid liens to settle claims. The court therefore reverses in part, vacates the bankruptcy court's order approving the Settlement Agreement, and remands for further proceedings consistent with this order. Specifically, the bankruptcy court should consider Liberty Bank's priority in the $7,170,703.00 affirmed by the Tenth Circuit in deciding whether to approve the Settlement Agreement.

**IT IS ORDERED** that the May 17, 2013 order and judgment of the bankruptcy court is reversed in part and vacated. This matter is remanded to the bankruptcy court for further proceedings consistent with this order.

Dated this 19th day of December, 2013, at Kansas City, Kansas.

s/ Carlos Murguia  
**CARLOS MURGUIA**  
United States District Judge